# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**ABDUR-RAUF A. RASHID,**

                **Plaintiff,**

-vs-                                                             **Case No.  3-:04-CV-291**

**COMMUNICATIONS WORKERS OF**
**AMERICA, AFL-CIO, et al.,**

                                              **Judge Thomas M. Rose**

                **Defendants.**

---

### ENTRY AND ORDER OVERRULING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. #17)

---

This matter arises from employment of Plaintiff Abdur-Rauf A. Rashid ("Rashid") at US Airways and its predecessor companies. Rashid was employed by US Airways and its predecessor companies from March 1, 1985 through March 31, 2005. The Communications Workers of America ("CWA") and CWA Local 4404 (collectively the "Defendants") were Rashid's exclusive collective bargaining representatives to US Airways at all times relevant.

Rashid originally brought a Complaint against the Defendants seeking two claims for relief. The First Claim for Relief was for violation of the Labor Management Relations Disclosure Act (the "LMRDA"), Union Members Bill of Rights, 29 U.S.C. §411. Rashid's Second Claim for Relief was for violation of the duty of fair representation (the "DFR") that Defendants owe him pursuant to 45 U.S.C. §151 et seq. Rashid's Complaint seeks compensatory damages, punitive damages and attorneys' fees and costs.

Subsequently, the Defendants sought dismissal of Rashid's Complaint. Pursuant to Defendant's Motion, Rashid's First Claim for Relief was dismissed. Rashid's DFR claim remains to be adjudicated. (Doc. #12.)

Now before the Court is Defendants' Motion for Summary Judgment. (Doc. #17.) This Motion is now fully briefed and ripe for decision. The standard of review for motions for summary judgment will first be set forth followed by a factual background and an analysis of the Motion for Summary Judgment.

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not ...obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of

material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c). The standard of review is followed by a factual background.

## FACTUAL BACKGROUND

On July 18, 2001, US Airways terminated Rashid's employment. Defendants grieved the termination as being in violation of the collective bargaining agreement (the "CBA"). (Defs.' Evid. App. 143.) On April 23, 2003, an arbitration hearing on the grievance was held before a System Board of Adjustment (the "Board") consisting of Margery E. Gootnick ("Gootnick"), an impartial arbitrator, Ron Rhoderick ("Rhoderick"), US Airways' arbitrator and Vicki Sheffey ("Sheffey"), the Defendants' arbitrator. (Id. 292.)

Following the arbitration hearing, Gootnick, Rhoderick and Sheffey held telephone conferences which Sheffey termed as "executive sessions" where the three arbitrators discussed the decision and remedy in Rashid's case. (Sheffey Dep. 22-26.) Following these executive sessions, Gootnick prepared a draft decision that was disseminated to Rhoderick and Sheffey via email on June 17, 2003. (Defs.' Evid. App. 256.) A second draft was emailed from Gootnick to Rhoderick and Sheffey on June 20, 2003. (Id. 274.) Then, on June 23, 2003, Gootnick mailed three copies of the final arbitration decision to Rhoderick and Sheffey. (Id. 291.) The decision was signed by all three arbitrators in June of 2003. (Id. 307.)

The Board awarded Rashid reinstatement to his position as a reservation clerk, with his seniority intact, and stated that Rashid would not receive back pay or contractual benefits for the

period from his discharge to his reinstatement. (Id.) Attached to the Board award that was forwarded to Rashid was a "concurrence" by Sheffey. (Id. 309.)

In the "concurrence," Sheffey agrees with the result and notes that, "during the Executive Session discussions, the Neutral Arbitrator determined that if, when Mr. Rashid is reinstated to the seniority list, he is on furlough status, he shall be entitled to all furlough pay and benefits afforded full-time employees of his seniority under the Collective Bargaining Agreements. It is with this understanding of the award that CWA concurs." (Id.) The language found in the "concurrence" is found in a email message from Defendants' attorney, Nicholas Manicone ("Manicone") to Sheffey (Sheffey Dep. Ex. 2) and Sheffey testifies that Manicone wrote the concurrence. (Defs.' Evid. App. 31-33.)

On October 19, 2001, while Rashid's grievance was pending, US Airways closed its Dayton Reservation Center. (Defs.' Evid. App. 306.) Consequently, there was no position at the Dayton facility to which Rashid could return. When the Dayton Reservation Center was closed, employees who held the same position as Rashid were offered to transfer to other locations based upon their seniority or they were offered paid furlough benefits. (Compl. ¶16.)

Following Rashid's reinstatement in June of 2003 to a job location that no longer existed, he arguably had two options. He could apply for a job at another location, in this case either Winston-Salem, North Carolina or Pittsburgh, Pennsylvania, or he could be placed on furlough. (Defs.' Evid. App. 13.) Rashid opted for furlough benefits. (Id. 18-19.)

US Airways refused to provide furlough benefits to Rashid. (Id. 19.) On February 18, 2004, an arbitration hearing was held to determine whether Rashid was entitled to paid furlough benefits because the position that he was to be reinstated into, without back pay, had been

eliminated. (Id. 220.) This second arbitration hearing was held before the same Board members who heard Rashid's first arbitration. (Id. 218.)

On June 8, 2004, the Board issued a decision denying Rashid furlough benefits on the basis that furlough benefits are a contractual benefit and the June 2003 decision denied Rashid contractual benefits from the date of his discharge through the date of his reinstatement. (Id. 224-26.) This decision also indicates that Board members Gootnick and Rhoderick had no recollection of the information in the "concurrence" being discussed in an executive session and found Sheffey's representations in the "concurrence" to be factually inaccurate. (Id. 228.) Gootnick and Rhoderick indicated that they saw the "concurrence" for the first time at the February 18, 2004, hearing. (Id. 227.)

Rahsid then filed a charge against CWA Local 4404 before the Ohio Civil Rights Commission alleging that the Union had discriminated against him on the basis of his race. (Id. 311-15.) This charge was dismissed for lack of merit. (Id.)

Rashid also filed a grievance before the Bar Counsel of the District of Columbia against CWA Attorney Manicone. (Id. 316-19.) This charge was also dismissed for lack of merit. (Id. 43-44.) Rashid then filed the Complaint that is the subject of this Motion on August 16, 2004. Next, the Defendants' Motion for Summary Judgment is analyzed.

## ANALYSIS

The Defendants now argue that Rashid's DFR claim should be dismissed on the grounds that there are no genuine issues of material fact and both Defendants are entitled to judgment as a matter of law. The Defendants offer several specific arguments in support of their Motion which are refuted by Rahsid. Each will be addressed in turn.

<u>Arbitral Immunity</u>

The Defendants first argue that the doctrine of Arbitral Immunity protects them against any liability in this case. Rashid responds that the doctrine of Arbitral Immunity does not apply in this case because Sheffey was acting outside the scope of her role as a decision-maker.

Certain persons, because they perform "special" functions, require a full exemption from liability for acts committed within the scope of their duties. *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1209 (6th Cir. 1982). The rationale behind granting this immunity, or exemption from liability, is that "the independence necessary for principled and fearless decision-making can best be preserved by protecting these persons from bias or intimidation caused by the fear of a lawsuit arising out of the exercise of official functions within their jurisdiction." *Id.* (citing *Butz v. Economou*, 438 U.S. 478, 508-11 (1978)). Among those granted immunity are persons functioning as an arbitrator. *Id.*

Arbitrators are selected for immunity because their responsibilities are functionally comparable to those of a judge. *Id.* In the case of arbitrators, as with judges, safeguards are present to protect participants and the integrity of the decision-making process. *Id.* The right of judicial review is among the most important of the safeguards. *Id.* Judicial review of an arbitrators' decision is available where the arbitrators have jurisdiction by consent, as is the case here. Other safeguards are also present in contractually agreed proceedings including the fact that the proceedings are adversarial, both parties have a right to representation, discovery is available, both parties may present evidence and both parties may cross-examine or impeach their adversary's witnesses. *Id.* at 1210.

Therefore, arbitrators are granted "arbitral immunity" for acts arising out of the scope of their arbitral functions and within their jurisdiction in contractually agreed upon decisions." The arbitral immunity is "justified and defined by the functions it protects and serves," and not necessarily by the person or the job to whom it attaches. *Austern v. Chicago Board Options Exchange*, 898 F.2d 882, 885 (2nd Cir. 1990), *cert. denied*, 498 U.S. 850 (1990).

Examples of functions granted arbitral immunity are serving as a member of a special joint dispute resolution committee, *Larry v. Penn Truck Aids, Inc.*, 567 F.Supp.1410,1415-16 (E.D. Pa. 1983), notifying and selecting the arbitration panel, *Austern*, 898 F.2d at 886, and the sponsoring of arbitration proceedings, *Corey*, 691 F.2d at 1211. In contrast, courts have refused immunity when an architect's actions, when acting as an independent arbitrator, were characterized as delay or failure to decide, *E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas*, 551 F.2d 1026, 1033 (5th Cir. 1977), *cert. denied*, 434 U.S. 1067 (1978), when the arbitrator was considered an "agent" of a party, *United States v. City of Hayward*, 36 F.3d 832, 838 (9th Cir. 1994), *cert. denied*, 516 U.S. 813 (1995), and where the acts complained of were outside of the arbitrator's jurisdiction, *Kemner v. Dist. Council of Painting & Allied Trades No. 36*, 768 F.2d 1115, 1119-20 (9th Cir. 1985).

In this case, the initial issue is whether Sheffey is entitled to arbitral immunity for her "concurrence." If Sheffey is entitled to immunity, then the Defendants are entitled to immunity. If Sheffey is not entitled to immunity, then the Defendants may not be entitled to immunity if Sheffey was acting as their agent.

Sheffey's Immunity

The CWA acts as one of the Board's sponsoring organizations and Sheffey was chosen by the CWA to represent the CWA as a mediator on the Board. (Sheffey Dep. 8-11.) The CBA provides that a Board member, such as Sheffey, is free to discharge her duty in her capacity as a Board member "in an independent manner without fear that [her] individual relations with the Company or with the Union may be affected in any manner by any action taken by [her] in good faith." (Defs.' Evid. App. 113.)

Sheffey testifies that, in addition to being a member of the Board, she was also an employee of US Airways and an officer of CWA Local 13302. (Sheffey Aff. 8-11.) Sheffey was compensated by the CWA for her service on the Board in the form of expenses and payment for any lost wages. (Id. 10.)

Rashid also argues, that by virtue of being appointed by the CWA, Sheffey was subject to being removed from the System Board by the CWA. This argument is not refuted by the Defendants.

Rashid also argues that Sheffey's conduct regarding the "concurrence" was not consistent with that of a judge or impartial arbitrator. Following the initial arbitration hearing, she contacted Defendants' attorney Manicone, explained her thoughts and requested that he reduce them to writing. (Sheffey Dep. 31-33.) She then used the writing prepared by Manicone as the "concurrence." (Id.) A judge or impartial arbitrator would not rely upon one of the parties to, *ex parte*, make his or her decision.

Finally, there is evidence that the other Board members had no recollection of the information in the "concurrence" being discussed in an executive session and found Sheffey's

representations in the "concurrence" to be factually inaccurate. (Defs.' Evid. App.  228.) The other arbitrators also indicated that they saw the "concurrence" for the first time at the February 18, 2004, hearing. (Id. 227.)

The "concurrence," which the Defendants argue was issued by Sheffey in her role as an arbitrator, indicates that the Neutral Arbitrator determined that if, when Mr. Rashid is reinstated to the seniority list, he is on furlough status, he shall be entitled to all furlough pay and benefits afforded full-time employees of his seniority under the Collective Bargaining Agreements. However, the other arbitrators, including the Neutral Arbitrator indicate that this statement is "factually inaccurate" and that they did not see it until long after their report was issued. Therefore, there is a genuine issue of material fact as to whether the arbitration board agreed to the assertion set forth in the "concurrence."

If the "concurrence" was not an action by the Board, it was produced outside the confines of Sheffey's role as an arbitrator and she is not entitled to arbitral immunity for it. This is confirmed by reviewing the standard for granting arbitral immunity that requires the availability of judicial review. If the "concurrence" was not an action by the Board, it would not be subject to judicial review and should not, therefore, gain arbitral immunity.

Because there is a genuine issue of material fact as to whether the Board agreed to the assertion set forth in the "concurrence," the Defendants are not entitled to summary judgment on their claim that Sheffey's actions regarding the "concurrence" are entitled to arbitral immunity. The Court must next look to see if Sheffey's unprotected actions or actions by another possible agent may be imputed to the Defendants in this case.

<u>Agency</u>

The Defendants next argue that, even assuming that arbitral immunity does not apply, there can be no vicarious liability imposed against the Defendants because Sheffey was not acting as their agent. Rashid responds that the Defendants are liable for the actions of their agents Sheffey and Manicone.

The doctrine of *respondeat superior* permits the imposition of liability on a principal for the wrongful acts of its agents. *General Building Contractor's Association, Inc. v. Pennsylvania*, 458 U.S. 375, 392 (1982). Agency is a fiduciary relationship "which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Id.* (citing Restatement (Second) of Agency §1 (1958)).

The Defendants in this case, which are unions, can act only through their agents. *Shimman v. Frank*, 625 F.2d 80, 94 (6th Cir. 1980), *cert. denied*, 469 U.S. 1215 (1985). A union can be liable if its agents actively participate in unlawful conduct. *Id.* at 95. However, a union may only be held responsible for the authorized or ratified acts of its agents. *Id.*

The common-law agency test is used to determine whether a person is acting as an agent of the union. *Carbon Fuel Company v. United Mine Workers of America*, 444 U.S. 212, 217 (1979). To find a union liable, it must be shown that what was done by their agents was done in accordance with their fundamental agreement of association. *Id.* (citing *Coronado Coal Co. v. United Mine Workers of America*, 268 U.S. 295, 304 (1925)).

In one example, an organization that appointed an individual as an arbitrator was liable for the individual's actions when the actions were not within the scope of those of an arbitrator.

*Hayward*, 36 F.3d at 838. The individual's authority was derived solely from the organization's appointment of the individual. *Id.*

In this case, the Defendants argue that Sheffey cannot be their agent because there is no evidence that she consented to act on behalf of or to subject herself to the control of either Defendant. The Defendants also argue that there is no evidence that either of them had the right to control her physical conduct in the performance of her duties in an independent manner.

However, there is evidence that Sheffey consented to act on behalf of or subject herself to the control of the Defendants. First, Sheffey was an officer of a CWA local and was appointed to the Board by the CWA, an appointment which she accepted. Also, Sheffey was compensated by the CWA for her service on the System Board in the form of payment for expenses and any lost wages.

There is also evidence in addition to the appointment and the pay that the CWA controlled Sheffey's conduct. First, the language in the "concurrence" issued by Sheffey is the same language as was sent to Sheffey in an email by CWA attorney Manicone. Sheffey testifies that she used this language from Manicone in the concurrence. Second, Sheffey's counsel objected to questions regarding her conversations with Manicone on the basis of attorney-client privilege and advised her not to disclose the contents of her discussions with Manicone. (Sheffey Dep. 31, 49, 76.) Had Sheffey been acting as an independent arbitrator instead of an agent of the CWA, her communications with Manicone would arguably have not been subject to the attorney-client privilege.

The Defendants also argue that Sheffey was not acting as Defendants' agent when she was performing her duties as an arbitrator. However, as determined hereinbefore, there is a

-12-

genuine issue of material fact as to whether Sheffey was acting as an arbitrator when she issued the "concurrence" about which Rashid complains.

Rashid argues that Manicone was also acting as an agent for the Defendants. However, the Defendants did not move for summary judgment regarding Manicone's status as an agent. There are genuine issues of material fact as to whether Sheffey was acting as Defendants' agent when she performed the act about which Rashid complains. Therefore, the Defendants are not entitled to summary judgment regarding their vicarious liability.

Breach of DFR

The Defendants next argue that Rashid has no evidence that they breached the DFR by engaging in conduct which was arbitrary, discriminatory or in bad faith. Rashid responds that, although his case does not fit into the traditional categories of DFR cases, the evidence shows, at a minimum, that there are genuine issues of material fact as to whether the Defendants acted arbitrarily and in bad faith.

The DFR requires the union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994)(quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). A union breaches its DFR if its actions are either arbitrary, discriminatory or in bad faith. *Id.* These three factors are separate and distinct and "a plaintiff need only show that the union's actions could be characterized in any one of these three." *Id.* This standard also applies to the conduct of union attorneys. *Peterson v. Kennedy*, 771 F.2d 1244,1259 (9th Cir. 1985), *cert. denied*, 475 U.S. 1122 (1986).

Regarding an allegation of arbitrariness, mere negligence or poor judgment on the part of the union will not support a DFR claim. *Id.* To support a DFR claim resting upon arbitrariness, the union's behavior must be so far outside a wide range of reasonableness as to be irrational. *Id.* (citing *Air Line Pilots Association International v. O'Neil*, 499 U.S. 65, 67 (1991)). Finally, a union may act adversely to a member of the bargaining unit "only on the basis of an informed, reasoned, judgment regarding the merits of the claims in terms of the language of the collective bargaining agreement." *Smith v. Highland Park Federation of Teachers,* Case No. 86-1662, 833 F.2d 1013, 1987 WL 38242 at **2 (6th Cir. 1987); *Schmidt v. International Brotherhood of Electrical Workers, Local 949*, 980 F.2d 1167, 1169 (8th Cir. 1992)(quoting *Smith v. Hussmann Refrigerator Co.*, 619 F.2d 1229, 1237 (8th Cir. 1980), *cert. denied*, 449 U.S. 839 (1980)).

A union's obligations include the duty to inform members of their essential rights under a collective bargaining agreement. *Walk v. P*I*E* Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir. 1992). As a result, union representatives must be aware of the essential elements of the collective bargaining agreement and must be able to advise members about their basic contractual rights and responsibilities under the collective bargaining agreement. *Id.* However, "[a]bsent bad faith or discriminatory animus, the union's failure to correctly identify the meaning of the contract provisions or the legal significance of its terms presents, at most, a claim for negligence. *Smith*, 1987 WL 38242 at **3.

A union's conduct  has been found to be arbitrary when the union ignored a meritorious grievance or handled the grievance in a perfunctory manner. *Ruzicka v. General Motors Corporation,* 649 F.2d 1207, 1211 (6th Cir. 1981), *cert. denied*, 464 U.S. 982 (1983); *Peterson,* 771 F.2d at 1254. A union's conduct has been found to be arbitrary when it is without rational

-14-

basis or is "egregious, unfair and unrelated to legitimate union interests." *Peterson,* 771 F.2d at 1254. Finally, a union's unintentional mistake has been found to be arbitrary if it reflects a "reckless disregard" for the rights of the individual employee but not if it represents only "simple negligence." *Id.; Poole v. Budd Company*, 706 F.2d 181, 185 (6th Cir. 1983).

Turning now to the case at hand, there is evidence that Sheffey, Manicone and the Defendants all breached their DFR. Each will be addressed seriatim.

Sheffey

In this case, there is a genuine issue of material fact as to whether Sheffey went beyond the scope of her authority as an arbitrator when she and/or Manicone prepared the "concurrence" that was described by the other two arbitrators as "factually inaccurate." Sheffey testified that she drafted the "concurrence" in an attempt to afford Rashid everything that "she felt" he was entitled to. (Sheffey Dep. 32.) Therefore, there is evidence that Sheffey acted arbitrarily and in bad faith by preparing an untruthful "concurrence" and allowing Rashid to detrimentally rely on allegedly false information contained in the "concurrence."

If the "concurrence" was based in fact, Sheffey may have acted in good faith and may not have breached the DFR. However, there is evidence that the contents of the "concurrence" were not discussed in an executive session of the arbitrators and that the "concurrence" is not factually accurate. If the contents of the "concurrence" were not discussed in executive session, then it would be irrational for Sheffey to write the contents in a concurring opinion and for Defendants' agents to advise Rashid that he was entitled to furlough pay based upon the contents of the "concurrence.' Therefore, there is evidence that Sheffey may have acted in bad faith.

Manicone

There is also evidence that Manicone, a CWA attorney, acted arbitrarily. Manicone mailed to Sheffey the exact language found in the "concurrence" and wrote Sheffey's name at the bottom. (Sheffey Dep. Ex. 2.) Manicone and Rashid then allegedly communicated on numerous occasions from July 2003 through September 2003. (Rashid Aff. 10/7/05 ¶3.) Manicone allegedly attempted to enforce the "concurrence" as though it was a part of the award of the arbitration panel by advising Rashid to go through the process of being placed on paid furlough status. (Id.) Also, Manicone allegedly did not disclose to Rashid that he had drafted the "concurrence", that it was not binding on the parties and that it provides no legal rights to an award. (Id. ¶¶2, 8.) Manicone's alleged attempt to enforce the "concurrence" as though it was part of the arbitrator's award even though he wrote it is irrational and not supported by facts.

The Defendants

Finally, there is evidence that the Defendants, through their agents, acted arbitrarily. The Defendants arguably informed Rashid that, when he was reinstated to the seniority list, he would be on furlough status and would be entitled to furlough pay and benefits when, in fact, this was not the ruling of the Board and there is evidence that the Defendants' agents knew that this was not the ruling of the Board. Rashid then allegedly relied upon these representations by the Defendants' agents to his detriment.

The Defendants' conduct in this case is analogous to the union's conduct in *Robesky v. Quantas Empire Airways, Ltd.*, 573 F.2d 1082, 1090 (9th Cir. 1978). In *Robesky*, the union failed to disclose a material fact to its member. The union in *Robesky* failed to inform an employee that her grievance would not be submitted to arbitration and had subsequently been settled. *Id.* at

1086. The employee then rejected the offer of settlement which she otherwise would have accepted. *Id.* at 1087. The Ninth Circuit held that, based upon this evidence, a trier of fact could reasonably find that the union acted arbitrarily and breached its DFR. *Id.* at 1091.

The Defendants' Arguments

The Defendants argue that there is no evidence that Rashid signed away his right to relocate to Pittsburgh or Winston-Salem in reliance on Sheffey's "concurrence." However, the "concurrence" indicates that Rashid "shall" be entitled to all furlough benefits afforded full time employees. And, as admitted by the Defendants, Rashid has indicated that he was harmed because he did not receive the furlough benefits that he wanted.

The Defendants next argue that the Union's interpretation of the contract was not so far outside the wide range of reasonableness as to be irrational. However, there is evidence that the Union's alleged "interpretation" that the arbitrators discussed the issue and the Neutral Arbitrator determined that Rashid would be on furlough status when he returned is not based in fact and is, therefore, irrational.

The Defendants next argue that Sheffey's assertion in the "concurrence" that the arbitrators held discussions about Rashid's entitlement to furlough pay does not constitute a breach of the DFR. However, as indicated above, there is evidence that the arbitrators did not hold such discussions. If this is true, Sheffey's "concurrence" that such discussions were held and the description of the result is irrational and violative of the DFR.

Conclusion

There are genuine issues of material fact regarding whether Sheffey, Manicone and the Defendants breached their DFR. Therefore, the Defendants are not entitled to summary judgment on the alleged breach of their DFR.

"Tainted" Grievance Process

The Defendants next argue that Rashid cannot prove that the Union's actions tainted the grievance procedure to such an extent that the ultimate outcome was likely to have been affected by the violation. The Defendants base this argument on three cases where the court determined that a plaintiff must show that the DFR breach had a substantial impact on the outcome of the grievance process. *Black,* 15 F.3d 573; *Dushaw v. Roadway Express, Inc.*, 66 F.3d 129 (6th Cir. 1995); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976).

This argument may have some validity if the DFR could only be breached with regard to the grievance process. However, the DFR may be breached in any part of the relationship between the union and the employee and not just with regard to the grievance process. *O'Neil*, 499 U.S. at 67. Therefore, Rashid need not necessarily show that the DFR breach had a substantial impact upon the outcome of the grievance process.

All of the cases cited by the Defendants in support of the "tainted" argument involve claims against the union with concomitant claims against the employer and arise from the union's failure or refusal to present evidence during the grievance/arbitration process. However, in this case, Rashid does not allege that the DFR was breached with regard to the grievance/arbitration process. His allegations involve actions outside the grievance process. As determined above, there are genuine issues of material fact as to whether Sheffey was acting

-18-

outside her role as an arbitrator when she and/or Manicone authored the "concurrence" upon which Rashid relied.

There are genuine issues of material fact and the Defendants are not entitled to judgment as a matter of law regarding their argument that Rashid must prove that the Union's actions tainted the grievance procedure to such an extent that the ultimate outcome was likely to have been affected. The analysis next turns to the Defendants' final argument.

<u>Employer Violation of Collective Bargaining Agreement</u>

The Defendants' final argument is that Rashid must show that his employer violated the collective bargaining agreement to maintain a DFR claim against the union. However, this argument, as previously determined by this Court, is not well founded.

The Supreme Court has determined that employees may bring a suit against both their employer and their union for breach of a collective bargaining agreement. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163-65 (1983). Where a suit is brought against both the employer and the union, it is termed a "hybrid" action. Such a suit comprises two causes of action. *Id.* The suit against the employer is based upon §301 of the LMRA. *Id.* The suit against the union is one for breach of the union's DFR. *Id.* "Yet the two claims are inextricably interdependent." *Id.*

The Supreme Court has also determined that a claim for breach of a union's DFR does not require a concomitant claim against the employer for breach of contract. *Breininger v. Sheet Metal Workers International Association Local Union No. 6*, 493 U.S. 67, 80 (1989). *Breininger* refers to the earliest DFR suits involving claims against the union for breach of the DFR in negotiating a collective bargaining agreement, a context in which no contract is possible. *Id.* The

-19-

Supreme Court has also determined that, even in a "hybrid" situation, the employee may, if he chooses, sue one defendant and not the other. *DelCostello*, 462 U.S. at 165.

The Sixth Circuit has more recently confirmed that a DFR claim against a union does not require a breach-of-contract claim against the employer. *Pratt v. United Automobile, Aerospace and Agricultural Implement Workers of America Local 1435*, 939 F.2d 385, 388 (6th Cir. 1991). In *Pratt*, the plaintiff realized that he had no claim against his employer under the collective bargaining agreement when his union allegedly failed to properly assist him in resolving difficulties with absences. *Id.* at 389. The Sixth Circuit has also recognized an allegation that the union had misrepresented facts underlying the negotiation of an agreement as actionable without a breach-of-contract claim against the employer. *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 561 (6th Cir. 1990) (citing *Anderson v. United Paperworkers International Union AFL-CIO*, 641 F.2d 574, 576 (8th Cir. 1981)).

In this case, Rashid does not allege that his employer breached the collective bargaining agreement. His allegation is that the Defendants breached their DFR with regard to issuing and then attempting to implement the "concurrence."

In an attempt to reargue this point, the Defendants allege that this case involves the triangular relationship between a union member, his union and his employer. However, while the employer may be involved, Rashid's claim is not against his employer. It is against his union. Rashid makes no claim that his employer failed to comply with the collective bargaining agreement. Therefore, the Defendants are not entitled to judgment as a matter of law on their argument that Rashid must also bring a claim against his employer.

-20-

<u>Summary</u>

There is a genuine issue of material fact as to whether the arbitration board discussed or agreed to the assertion set forth in the "concurrence." Therefore, the Defendants are not entitled to summary judgment on their claim that Sheffey's actions regarding the "concurrence" are entitled to arbitral immunity.

There is also a genuine issue of material fact as to whether Sheffey was acting as an agent for the Defendants when she issued her "concurrence." Therefore, the Defendants are not entitled to summary judgment on their claim that Sheffey was not acting as their agent.

There are genuine issues of material fact regarding whether Sheffey, Manicone and the Defendants breached their DFR and there are genuine issues of material fact as to whether Sheffey and Manicone were acting as agents of the Defendants. Therefore, the Defendants are not entitled to summary judgment on their argument that they did not breach their DFR.

Finally, the law does not require that Rashid present evidence that the grievance process was tainted by the Defendants' conduct and Rashid need not establish that his employer violated the collective bargaining process to maintain a claim against the Defendants.

There are genuine issues of material fact and the Defendants are not entitled to judgment as a matter of law on Rashid's DFR claim. Therefore, Defendants' Motion for Summary Judgment is OVERRULED. Rashid's DFR claim remains to be adjudicated.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-Eighth day of November, 2005.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record